## Ex parte KAICHIRO SUGIMOTO.

District Court, N. D. California, Southern Division. July 5, 1929.

No. 20006.

Bianchi & Hyman, of San Francisco, Cal., for petitioner.

George J. Hatfield, U. S. Atty., and H. A. Van der Zee, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

KERRIGAN, District Judge. This is a petition for a writ of habeas corpus on behalf of Kaichiro Sugimoto, a Japanese. The petition shows that he was admitted to Hawaii July 29, 1907, and that shortly thereafter he stowed away on a freighter on which he came to the mainland, where he was smuggled ashore at San Francisco. He remained here until July 18, 1928, when he departed for Japan. He returned to San Francisco this year, presenting a Japanese passport bearing a nonquota immigration visa granted him as a returning resident by the American consul at Yokohama on March 12, 1929, and has been excluded by the Board of Special Inquiry. This decision has been affirmed by the Board of Review, with permission, however, to return to Hawaii, where he was lawfully admitted in 1907, in lieu of deportation to Japan.

The findings of the Board of Special Inquiry show detained to have a wife and several American-born children living in San Francisco, where he is the proprietor of a restaurant. He is also found to be literate, and in sound physical condition. The Board further finds that he was a laborer at the time of his arrival on the mainland in 1907.

The exclusion order is upon the ground that Sugimoto is not "an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad," (Immigration Act of 1924, § 4(b); 8 USCA § 204(b), in that he has not sustained the burden of proof as to his lawful admission to the United States previously to the present application for admission.

◼ The pertinent statutory provision applicable to Sugimoto's original entry to the continental United States is as follows:

"Whenever the President shall be satisfied that passports issued by any foreign Government to its citizens or subjects to go to any country other than the United States, or to any insular possession of the United States or to the Canal Zone, are being used for the purpose of enabling the holder to come to the continental territory of the United States to the detriment of labor conditions therein, the President shall refuse to permit such citizens or subjects of the country issuing such passports to enter the continental territory of the United States from such other country or from such insular possession or from the Canal Zone." (8 USCA § 136(h).

In accordance with this section, which was part of the Immigration Act of 1907 (34 Stat. 898), by Presidential Proclamation of March 4, 1907, Japanese laborers with passports for Hawaii were excluded from the mainland, and this exclusion continues under the Presidental Proclamation of February 24, 1913. In the summer of 1907, therefore, when Sugimoto came to the mainland, his entry, if he was a laborer, was unlawful. Akira Ono v. U. S. (C. C. A.) 267 F. 359.

◼ The petition does not directly attack the finding that Sugimoto was a laborer in 1907 when he came to the mainland, but alleges that he has not been a laborer at any time since his entry. Of course, it is his status at the time of entry, and not that subsequent to entry, which controls (Tulsidas v. Insular Collector, 262 U. S. 258, 43 S. Ct. 586, 67 L. Ed. 969), and he has not sustained the burden of proof imposed upon him by section 23, Immigration Act of 1924 (8 USCA § 221), as to a showing that he was not a laborer at the time of his surreptitious entry.

◼ But it is urged on behalf of the alien that the illegality of his entry to the mainland in 1907 is immaterial, in view of his lawful entry and admission to Hawaii. This contention is based upon the definition of "United States" in section 28(a), Immigra-

tion Act of 1924 (8 USCA § 224(a), which reads as follows:

"(a) The term "United States," when used in a geographical sense, means the States, the Territories of Alaska and Hawaii, the District of Columbia, Porto Rico, and the Virgin Islands; and the term 'continental United States' means the States and the District of Columbia."

It is argued in effect that the inclusion of Hawaii in this definition permits an alien lawfully admitted to Hawaii to establish his residence anywhere else in the United States, including the mainland, and to go and come from · that residence, on temporary visits abroad, basing his right to re-enter on the primary admission to Hawaii.

The difficulty with this argument is that, whatever the rule might be with regard to aliens of other nationalities, in the case of Japanese laborers, the lawful admission to Hawaii is a restricted admission, and, under the Presidential Proclamations, does not carry with it the right to admission to the mainland. The Immigration Act of 1924 is expressly stated to be in addition to and not in substitution for the provisions of the immigration laws (section 25; 8 USCA § 223). The labor provisions of the Immigration Act of 1907, supra, and the Presidential Proclamations thereunder, are therefore still operative. A Japanese laborer, although lawfully admitted to Hawaii, is still barred from entry to the mainland.

■ This being true, Sugimoto is in no better position with regard to his right of entry to the mainland than he would have been in 1907. No right of re-entry can be predicated upon residence in the United States established following unlawful entry. Hurst v. Nagle (C. C. A.) 30 F.(2d) 346. Accordingly, Sugimoto would not be entitled to admission to the continental United States as a nonquota immigrant under section 4(b) of the Immigration Act of 1924 (8 USCA § 204(b).

■ But it is further contended that, assuming that he is not entitled to admission under the above section, he is nevertheless entitled to admission under section 3(6) of the same act (8 USCA § 203(6), as he is not now a laborer. By this section admission as a nonimmigrant is accorded to "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." By an executive order of July 12, 1926, such nonimmigrants must present visaed passports. The State Department is authorized to make regulations to carry the order into effect. Accordingly,

the State Department has directed consular officers as follows, with respect to visas under section 3(6), Act of 1924:

"In order to obtain a visa under the statutory and treaty provisions referred to the applicant must show that he is going to the United States in the course of a business which involves, substantially, *trade or commerce between the United States* and the *territory stipulated in the treaty.* For example, one going to the United States as a member or agent of a commercial concern in his own country, in transactions involving commerce between the two countries, or one going to the United States with a stock of goods produced in his own country, to be sold in the United States and to be replenished from other goods produced in his own country, would be entitled to the benefits of the statutory and treaty provisions in question.

"The distinction to be observed is between the case of one engaged in trade or commerce between the two countries and the case of an immigrant or settler who seeks to come without such a relation to commerce, but who may thereafter engage in purely local transactions which lie outside the purposes of the commercial treaties." General Instruction Circular, No. 926, Department of State, §§ 58, 59, pp. 16, 17.

The petition in this case alleges:

"IV e. That the exercisal of his election or option, under the order of the Secretary of Labor, to voluntarily depart for the Territory of Hawaii is a vain and useless act; that it would necessitate expenditures to and from said Territory; that if said detained should depart voluntarily for the Territory of Hawaii he would, and intends, to immediately return to his family and business at the City and County of San Francisco, State of California, as one who is not a laborer skilled or unskilled."

Inferentially, this is intended to be a claim of right to enter under section 3(6), and I am asked to hold in effect that Sugimoto is entitled to admission under this section and to disregard the absence of the required consular *nonimmigrant* visa from his passport. In certain instances where the right of the alien to a visa is clear, the courts have held that the alien will not be excluded merely because of the necessity of what amounts to a clerical correction. Re Spinnella (D. C.) 3 F.(2d) 196; Ex parte Seid Soo Hong (D. C.) 23 F.(2d) 847. But in the present case it would appear that Sugimoto, who, as a restaurant keeper, would engage in purely local transactions, could not be granted a consular visa as a nonimmigrant (see Instruction, su-

pra), and could not be admitted under section 3(6).

For the reasons above set forth, the petition for a writ of habeas corpus in this case does not set forth grounds for relief, and the petition will be denied and dismissed.